Next case is In Re Congoleum Corporation, number 23-1295. Whenever counsel is ready, you can start. Take your time. Good morning, Your Honors. Ian Gershengorn, on behalf of BAP, I'd like to reserve, with the court's permission, four minutes for rebuttal. That'll be granted. The core of this dispute is an unambiguous provision of the confirmation order in Congoleum's 2010 bankruptcy that BAP Iron Works has no responsibilities for any of the liabilities of the Congoleum flooring business. That provision was an essential part of the settlement and sale order that allowed Congoleum to sell back its insurance policies, bringing hundreds of millions of dollars into the bankruptcy estate while eliminating more than $900 million in potential insurance coverage for BAP. As Judge Kaplan properly found below, Occidental was a creditor in the Congoleum bankruptcy, with notice of the settlement and sale agreement, the planned disclosure statement, and the confirmation order, and Occidental was thus found. Occidental and the district court offered three main arguments for why Judge Kaplan erred in reaching that conclusion. First, they claimed he abused his discretion by reopening the bankruptcy case, rather than leaving the matter for Judge Arleo to decide. But Judge Kaplan had recently interpreted his- Can we talk about that a little bit? This wasn't really brief, but I'm curious about your position on this. It seems that the parties and Judge Kaplan, and I guess Judge Arleo as well, discussed our Zinchiak case and other cases, dealing with sort of who's best suited. But is that really applicable here? Because those cases dealt with competing state court matters. Isn't this a matter of who- was this referred to the bankruptcy court? Was it not? It seems to me that the original bankruptcy, after Judge Pisano decided it, was referred back, and it was never withdrawn. So, doesn't that mean that the Chief Bankruptcy Judge had the authority to decide it? The reference was not withdrawn, right? The reference had initially been withdrawn, but you're absolutely right, Your Honor. Judge Pisano had referred it back. This is in A1972 in the record. He referred it back to the bankruptcy court for case administration and such other proceedings as may become necessary. And so, we do think this is a situation in which Judge Kaplan properly received the motion to interpret and clarify the sale order and the confirmation order. And, you know, to the extent that Judge Arleo or the others on the other side think that there was a problem with that, we really do think it is misplaced. We think that the Supreme Court has said in Travelers, and this Court has said over and over, as Your Honor said in Zinchiak and Lazy Days and Esther Steele, that the bankruptcy court is the natural court to interpret and enforce its own order. But what is the enforcement of the order? Let's go back for a second, because I want to understand, what is your definition of for other cause in 350B? So, we think that in this case, for other cause means to interpret or enforce a prior order of the bankruptcy court. We think there are at least two here, the confirmation order and the century sale order, and that both of those, that that constitutes cause. How would the resolution of the motion here impact the administration of the bankruptcy estate? Your Honor, it would not impact the administration of the bankruptcy estate, but that is not the test. Well, why is it not the test? I mean, that was present in both Zinchiak and Lazy Days. So, Your Honor, but it was not present, for example, in the Supreme Court's decision, which of course binds it to Travelers. That was a situation in which Travelers, of course, was an insurance company that had put in money into the estate, and that the claimants there were asbestos private plaintiffs. And what the Supreme Court said was, of course, the court has jurisdiction to interpret its order. I mean, of course, this court said exactly the same thing, admittedly in unpublished decisions, in both LandSource and TE HoldCorp. And so, it really has to be that way, Your Honor. The test can't be, does it impact the estate? Because the bankruptcy court all the time issues, you know, decides things like sale orders and things that affect non-debtors. And so, it's critical that in order to enforce the orders of the bankruptcy court, that the bankruptcy court be able to adjudicate disputes between two non-creditors. And again, that happens over— Well, I understand the distinction between jurisdiction and core and non-core, but I'm still back to thinking, isn't this an interpretation of 350B?  Yes. Okay, so you've said that it doesn't—the best reading of 350B doesn't include things that would impact the administration, the bankruptcy estate. So then, what is the standard that we're looking to here, and what are the boundaries of allegance? So, I'd like to make two points on 350B in particular, Your Honor, that, like, focusing on the estate or the debtor is really a mistake there. Because 350B, one of the prongs is to afford a court release to the debtor. And that says, or for other cause. So, it would be very odd to limit or for other cause to things that affect the debtor as a matter of statutory construction. But then again— So, what is the limit? I'm sorry? So then, what is it, if anything? So, it is—I mean, it's a broad provision that says, for other cause. We think at the core of it, or at least one core piece of it, is to interpret or enforce the bankruptcy court's own orders, and particularly the confirmation order. That really is the core of the plan. And it really has to be that way. If you think about what the bankruptcy court is doing all the time, it's re-adjudicating and changing the rights, the legal rights of the parties. And if an entity in the position of Bath Iron Works can't rely on the bankruptcy court's protections, for example, in a sale, or in Travelers, the protection that was granted to the insurance companies there, then the bankruptcy system really falls apart. And I think Judge Kaplan recognized that. He said, like, if we go down this road, there's going to be an asterisk on all settlements. So I think at the core— But why would the Article III judge be competent to make that determination? I guess what I'm still struggling with is, it's not as if this issue wouldn't have been decided. It simply would have been decided by the Article III court. So, Your Honor, it certainly could have. But I have a couple of points on that. One, I mean, this court— Well, actually, let me just push back on that. It has to be, unless you fall within 350-bit. So, I— So, would you agree with that? I do think that's right, Your Honor. It has to be reopened in that case. But what—I mean, this court has addressed subject matter jurisdiction, which is what Your Honor is presumably getting at, and within 350-B over and over and over again, right? That's Esser Steele. That's Allegheny. That's Lazy Dave. Like, these are cases in which the bankruptcy court is reopening cases in order to interpret its prior orders. And, indeed, although this is under 350-B and reopening, I mean, I think it is worth noting, as Judge Kaplan did, that the actual reopening is kind of a ministerial task, and that the real question is, are you providing the substantive relief that's appropriate? And, again, I think when you're getting into interpreting and enforcing a prior order of the bankruptcy court, that, again, is about allocating the rights and responsibilities of non-debtors, that the court has to be able to do that in order to protect its jurisdiction, because parties won't settle the cases. They won't, for example, pour in the insurance funds into the estate, as happened in Travers, as happened in this case. And companies, by the same token, such as BIW and Staff Ironworks, can't rely on the bankruptcy court's actions in giving up its rights under the policy, and it really causes the bankruptcy court to grind to a halt. If I could hit the other two points that I'd like to just touch on, because I think they're essential for understanding what Judge Kaplan did. Although Occidental portrays itself as just a pre-petition vendor, what Judge Kaplan found was that it was a core concreditor in the bankruptcy. Occidental had known for years that it had litigation exposure to the contaminations of the Passaic River, and companies that had agreed to indemnify Occidental had appeared in the bankruptcy, filed claims, and, in fact, filed claims on Occidental's behalf. So Occidental was a predator in the core sense that's relevant here. And third, Occidental had the sufficient notice. Judge Kaplan carefully reviewed both the documents that Occidental admits it receives and the documents that Occidental disputes it receives, and he found that adequate notice had been given, particularly given that Occidental was a sophisticated company with a significant known environmental claim represented by ABLE counsel. Now, but your adversary points out an interesting policy argument, that if they're required to spend money, or any creditor is required to spend money and sift through and try to discern what's going on and whether that might affect them sometime in the future, won't that result in exorbitant costs, and is that really fair? So, Your Honor, a couple of points on that. We really don't think that's right. Actually, we think if you go down that pathway, Kevin, in that way, madness lies. The point of this is a sophisticated company with a known environmental claim that hired ABLE Bankruptcy Counsel for precisely this reason. What Judge Kaplan, an experienced bankruptcy judge, found was the seven pages of disclosures would at least have put a sophisticated counsel on notice that you need to look at those provisions. What the other side's argument basically amounts to is, well, we don't have to look at documents because they're really big. But that's exactly why they've hired experienced counsel. Now, you're talking about, again, a company with a significant environmental claim. It is then told, as Judge Kaplan found, that there were disclosures that affect both asbestos and non-asbestos claims. And their position, then, that our lawyers don't have to read the documents, I think is really quite troubling. And, again, it goes to this core question of what are we expected to – how are we expected to have resolutions in the bankruptcy court, have lasting staying power, and be in a situation that companies can rely on those determinations in giving up substantial rights? Remember, we gave up $900 million in insurance coverage. The insurance companies poured $230 million into the estate. Those things are done on the background assumption that parties with notice are bound. And the Supreme Court really, I think critically, couldn't be more clear on that. And this court, too, if you think about what this court said in Penn Central Transportation, that was a situation in which the client didn't even know it had a claim. And this court said, because you had notice, because you were a creditor, you are bound and you've used that claim. And so we think to go down the road of, gosh, that was a really big document in a situation with a known massive environmental claim and able counsel really is not sustainable. The other argument, to be clear on this point, is what Judge Kaplan found is that it was more likely than not that they actually had gotten notice of the century scale motion itself, although he said it couldn't be conclusive. He said the scales tipped that way. Even Occidental doesn't argue that that would not have been sufficient notice. All right. Well, you've got some substantial time left, so we'll hear from you on rebuttal. Thank you. Thank you. Good morning, Your Honors. Good morning. And may it please the Court. Erin Murphy on behalf of Occidental Chemical Corporation. The district court radically – I'm sorry, the bankruptcy court radically abused any discretion it may have had when it reopened this decade-old bankruptcy proceeding so it could interpret a finding that was made not by the bankruptcy court but by the district court and was never even reduced to a section 105 injunction or any other type of coercive order capable of enforcement. To be sure, bankruptcy courts do have some discretion to reopen bankruptcy proceedings when necessary to interpret and enforce their own orders, although even then there are caveats and principles that they should apply, taking into account factors like delay. But by the bankruptcy court – But going back to first principles, I mean, when the district court refers something, as the standing order does, to the bankruptcy court, the bankruptcy court can act, right? The proceeding is closed, so the bankruptcy court can act only to the extent the bankruptcy court has jurisdiction to reopen the bankruptcy. And when the question is how to interpret a finding that the bankruptcy court itself didn't issue, that's just – I mean, I haven't seen any case where a bankruptcy court reopens a proceeding so they can decide what a district court permits when a district court entered a confirmation order. Well, it's unusual. I mean, there's not that many district courts that get that involved. It is. It's extremely unusual, and that's what makes this such a kind of an odd case for a bankruptcy court to reopen because it's rare that you have what Judge Pisano did here in withdrawing the reference and presiding over the confirmation process himself. But once you have that and kind of what Chief Judge Kaplan himself said here with the operative order is the order that was issued by the district court, the entire justification – I mean, one of the two principal justifications for the bankruptcy court reopening is gone because if you look at the cases, what they're talking about is that the judge who issued the order has unique insight into what the order means. But Judge Kaplan has no more unique insight into this than Judge Arleo or Judge McNulty in the DBL proceedings because he didn't issue this. He didn't even preside over the bankruptcy proceedings before the reference was withdrawn or later. I mean, that's another really unusual – As you correctly point out, this is an entirely new set of judges. But you're saying that the district court in the first instance is the only one that could really have made this call, the application of a prior district court order? Well, the district court unquestionably has jurisdiction and the power to do this. In the ordinary court – They'd have to withdraw the reference, though, wouldn't they? No, not at all. Of course not. This was an issue that arose in the context of just regular litigation. We sued BIW in litigation where we're – How about reopening the bankruptcy? Isn't that something that the bankruptcy judge has the authority to do? Only consistent with the statute and the principles that this court has identified that limit that authority. And one of those, to get to the question of what is within the scope of the power to reopen, the other thing that's missing here is in travelers and all of this, the coercive order. Somebody has brought a second set of litigation that is alleged to violate a discharge order or violate a section 105 injunction. And we don't have that here. Because BIW, for all its claims that it was all about adequate protection and it was front and center in this bankruptcy, it didn't even participate in the first Congolian bankruptcy, let alone ever go in and ask for adequate protection or a release or a section 105 injunction. So there is no order. There's no injunction. There's nothing in the section in the original bankruptcy that is some sort of order coercive in the sense of a 105 injunction or a discharge that you could say was – there's no argument that it was violating a bankruptcy court order. They're arguing essentially an issue preclusion argument. They think a finding was made in the course of confirming this bankruptcy that ought to have preclusive effect in the current proceedings and that are And, I mean, in the ordinary course, issue preclusion isn't – that's always decided by the court before it's raised. You don't go back to the judge that issued the finding and say, you know, what was the meaning of that and does it have preclusive effect. So here, you know, and there is – we admit, of course, there is an exception generally in the bankruptcy context, but really that exception is limited to two things that are not present here. One, you need to have some sort of order that's being enforced, not just a finding that was made somewhere in the course of a bankruptcy proceeding that has no coercive effect and was never reduced to any kind of order. And two, you ought to have the judge who made the finding. And here, while it's certainly true, you know, Judge Pisano, who had issued the confirmation order, had passed, Judge Ferguson, who was the bankruptcy judge who presided over the Congolian bankruptcy, she was still on the bench when this motion to reopen came in. And nonetheless, Chief Judge Kaplan decided to reassign the case to himself and said, I think I'm better positioned than the bankruptcy judge who actually presided over the bankruptcy. Are you saying that's an abuse of discretion? I think it's all an abuse of discretion for him to have reopened these proceedings at all. And when you take kind of the fact that he's not – it's a district court order that he's interpreting and he's not the bankruptcy judge who was involved in the original bankruptcy proceedings, it's just an extraordinarily unusual set of circumstances for an Article I tribunal to say, I'm going to essentially wrest jurisdiction away from a district court that has pending before it the very question that I'm now going to say I'm going to resolve in the first instance instead, especially when that Article I tribunal is acting underneath the Article III judge, the district court here before whom these issues are pending. And then unusual that the Article III tribunal would have to defer to the findings of the Article I court, particularly as it relates to something like statutory interpretation. That's exactly right. And it just becomes – I mean, that's ultimately what this comes down to is by going to the bankruptcy court first, that enables them to try and claim some sort of deference to findings and determinations that were made by the bankruptcy court. And the bankruptcy court just never should have been making those in the first place. And I would like to note that even if you set aside kind of those two what I think are irreducible minimums of what you need for reopening the same judge and a coercive order, one of the key factors that is taken into consideration in motions to reopen is delay. And set to the side for the moment that we're talking about a decade-old bankruptcy, we have a massive delay here even in the course of this dispute that's arisen. Because BIW was first sued by Congolians in 2017 on the theory that BIW, not Congolians, has liability for all of these environmental issues. And then we sued BIW in 2018 on the theory that BIW, not Congolians, has all of these liabilities. Both of those cases were brought in district court, and BIW did not respond to either by saying, oh, we need to go to the bankruptcy court and ask the Congress to reopen the 2010 bankruptcy proceeding. It instead proceeded as an agreement that the right judge to resolve those issues was the district court. In fact, as Chief Judge Kaplan notes in his order in this proceeding, BIW resisted when the issue first went before the bankruptcy court, which happened because there was an adversary proceeding in the course of Congolians' second bankruptcy. BIW didn't want the bankruptcy court resolving this. They said we should be in district court. It was only four years into litigation with DBL and three years into litigation with Occidental. They received a favorable ruling from Chief Judge Kaplan in the context of this adversary proceeding in the second Congolian bankruptcy, and all of a sudden, lo and behold, they decided, oh, this should have been a motion to reopen. This all should have been before the bankruptcy court.  What was that? What was that favorable ruling? The favorable ruling was so in the course of the second Congolian bankruptcy, BIW and Congolian litigated between themselves the question of what the meaning of this finding is. Now, I would note, by the time Chief Judge Kaplan is resolving that question, there's actually not adversity as between BIW and Congolian. They have come to an agreement among themselves. What was the agreement? They think that the finding, they both decided the finding means what BIW says it means. They actually went to Chief Judge Kaplan with a settlement agreement and said, hey, would you enter all of these findings and declare them preclusives for purposes of litigation against companies like Occidental? Wouldn't it be correct to say that BIW has no responsibility for the liabilities of the flooring business? Yeah, I don't actually. Really, as happens when you've got a judge who wasn't familiar with the proceedings, we do not think that he got it right about this finding at all. I think in context, all this finding that was happening back then, was doing, is resolving that question of liability as between Congolian and BIW in the sense that Congolian had agreed to indemnify BIW for any past liability. And, in fact, if you go look at the proceedings. It was a finding that BIW had no responsibility for the flooring. But they have no responsibility in the sense that they don't have responsibility as the Congolian because Congolian agreed to indemnify them. And to defend them. And that's actually, so when we sued BIW in the circle action, BIW filed a third-party complaint against Congolian. And BIW, in that third-party complaint, they didn't raise all this bankruptcy court stuff. They didn't say this is all about estoppel or preclusion or any of that. Their argument was that Congolian had breached a 1986 contract, under which when there was a restructuring of all these companies, Congolian agreed to indemnify and defend BIW in any future litigation. Now, that may well be true. Is that because Congolian felt that BIW was not necessarily involved or? You know, there was a restructuring of all these companies in the 80s. And the real underlying dispute here about who actually has liability all arises out of that restructuring. There was like an earlier version, known as 1984 Congolian. Its assets and liabilities were sold to, were kind of put in one company. But the Congolian, 1984 Congolian entity, was merged into BIW. And so there's basically a dispute between the parties, and there used to be a dispute between BIW and Congolian, about which parts of 1984 Congolian went with which company. Would it be fair to say that BIW does not have any liability? I mean, BIW believes it has no liability. But our view is BIW, as a legal matter, has the circle liability. Maybe they did reach an agreement with Congolian that Congolian has to indemnify them. Just one last question. Could you be more specific about what liability BIW has? Sure. So, you know, this is all about the separate circle action. We sued them as a potentially responsible. It seems like a totally separate business from the others. Well, when BIW was sold off, this original Congolian 1984, part of it was merged into BIW. And so the dispute is the part, you know, the company, that 1984 Congolian that was merged into BIW before it was sold off, what came with that? And if what came with that was liabilities of 1984 Congolian, then BIW is the liable party. So you would say BIW is still on the hook? Yes. I mean, we have sued them in our circle action, and we maintain that they are the potentially responsible party. It may well be that they have an indemnification agreement with Congolian, and we think all the finding here was ever doing was say that they, as between themselves, Congolian had agreed to indemnify, so as between themselves, you know, there's not responsibility on BIW's part. And, frankly, I really think that has to be what the finding means, because otherwise, I mean, on their reading, you have the bankruptcy court resolving a question of liability about claims between two sets of non-debtors, neither of whom are participating in the bankruptcy. Well, can we go back to that? Because you said the two irreducible minimums are the same judge in a coercive order. Where does that come from? You know, for me it comes in that I can't, like, find any case that doesn't involve both of those things. And I'd also think that to your point about the effect on the bankruptcy state, it seems that when you look at where 350B came from, going back to the 1800s Act and then the 1970 rule and the 1938 amendment, it's always talking about impact to these states. It's always talking about hidden assets, creditors that weren't known, something that goes to the function of the bankruptcy tribunal. So is that something we should be thinking about? I think that's right. I will agree with my friend on the other side that, you know, I don't think the Travelers case, for instance, obviously did involve third-party liability, not the debtors' liability. But what makes Travelers and all the other cases fundamentally different is they all involve the Section 105 injunction. And so the argument was the bankruptcy court issued an order that this second proceeding violates. You should be, like, being held in contempt for violating the injunction. And then in Travelers, as often happens in these cases, there was a dispute about what actually was the scope of the 105 injunction. And so you say the bankruptcy court who issued it is best positioned to answer that question. But here, when you're talking about it, again, for all BIW has this story to tell now, BIW never asked for any adequate protection. And that's quite notable because they're now claiming to have lost insurance rights under dozens and dozens of policies, yet there's no finding in any of the other sales. They never participated. They weren't a negotiator at the table. They weren't asking for any of this. And, in fact, if you go look at the proceedings, what was actually being represented by Congolium in the context of these sales was that BIW and these other entities listed in that finding didn't have rights under these insurance policies. Congolium. You've complained a bit about the bankruptcy court basically usurping some authority here. But didn't Judge McNulty basically defer to the bankruptcy court? I mean, they may not have said that, but they didn't decide the motion, right? Well, Judge McNulty actually denied a motion to dismiss, agreeing that these plans should go forward. And then the parties came back with a settlement agreement to Judge McNulty and said, we have resolved our dispute, and that was the end of the proceedings in the DBL case. And in our case, we never got to Judge Arleo because the magistrate judge said we didn't have the right notice or whatever it was for purposes of filing our motion, which Judge Arleo has now said was an abuse of the magistrate's judge discretion in not hearing our summary judgment motion on all of this. So we think the right, I mean, of course, BIW gets to litigate all this. We just think they should litigate it as would normally happen in the district court proceedings where we sued BIW and there's an Article III judge perfectly capable of resolving all of these questions. All right. Thank you, counsel. Thank you very much. Thank you, Your Honor. I have five points this morning, so I'm going to cover a lot. First, with respect to the reopening, this is an abuse of discretion standard. So the question is whether Judge Kaplan abused his discretion when? Judge Pisano, who didn't decide the initial order, referred it back to the bankruptcy court. Second, Judge Kaplan had already decided this very issue in the previous Congolian bankruptcy, and he said as much. Third, we were. The second bankruptcy. Correct. In the second bankruptcy. Second. Third, we were completely transparent with Judge Arleo. We filed a stipulation on the docket in the accidental case that said we're going to resolve this through the bankruptcy, and then we got permission from Judge Vetri, who was the magistrate for Judge Arleo, to proceed before Judge Kaplan. And then finally, it's just a flat misstatement by counsel. We did not go to Judge Kaplan the second time. We went to Judge Ferguson. This is at A, 1816 to 1817, and she referred it to Judge Kaplan. So in terms of abuse of discretion, there was no abuse of discretion here. Second, it is not the case that this court's prior cases all deal with coercive orders. You think of a case like Lazy Days, which was the question was whether a lease was assignable. It is not the case that these are all coercive orders. Third, there's a lot of talk about what happened at the hearing. It is absolutely clear that this was not an agreement between Congolian and V.I.W. I'm sorry, Ar, thank you for bringing me back. At the century approval hearing, this is at A, 1020, it is absolutely clear that this was not just an agreement between Congolian and V.I.W. The excess insurers were complaining precisely because it was getting rid of the rights of V.I.W. for third-party claims. In fact, the excess insurers said, this is at 1021 to 1023, we would have no problem if this were just an agreement between Congolian and Century. The problem is it purports to bind everyone. And so Judge Fuentes, you're exactly right. This broad finding, this context is absolutely critical. Remember, V.I.W. is giving up not just its rights against Congolian, it's absolute right to exercise these insurance policies against claims by companies like Occidental. And so the idea that V.I.W. gave all of this up just so it could protect itself against Congolian is preposterous. And indeed, the idea that adequate protection wasn't that issue, again, I just urge the court to read through this hearing. It starts at A, 1020. You will see, A, that CERCLA was front and center. They were talking about environmental claims by third parties. That, B, it was not just a bilateral agreement between Congolian and Century, it was about, the whole thing was about other parties. And third, Judge Fuentes, you're absolutely right. The whole question was the reason they got adequate protection from V.W.I., the reason V.I.W. could give up these policies, is that it had the finding that protected it from liability. So V.I.W. has no responsibility for the liability. That's right. We're a company up in Maine that builds ships, right? We're not having anything to do with the Passaic River, right? It's a horrible mess right now. It's being cleaned up. We're glad it's being done. We shouldn't have to pay for it. But regardless of whether you agree with that, that was the finding, and that can't be attacked now. Two quick more points, Your Honor. First, collateral estoppel. Of course, it's always open to the second court to decide the collateral estoppel issue. The whole point with all of these cases, like Lazy Days and Travelers, they could have decided it in Travelers' case. They could have just had the second, the asbestos cases decided. But the point is, the best position court to interpret the court's order is that court. Travelers wasn't a 350B case, right? Just so I'm recollecting. No, Your Honor. It isn't, but it's post-confirmation, and that really is the key. And I'd just like to close with some of the questions Your Honor's worried about. There can never be impact on the state once the plan is confirmed and the case is closed because the confirmation ends the estate under 1141B. The court recognized this in Resorts International when it had the conceivable impact, when it said the conceivable impact test no longer applies. That test post-confirmation is impact on the plan. And here the plan, the confirmation order is impacted if you can't enforce the confirmation order. That's what Resorts International said. It said the interpretation of the confirmation order is related at least, and Esther Steele says actually it's more than just related, it's at the court. Suppose the district court denied a motion to dismiss on this same issue? Judge Arleo. Any court, but sure. Could you then go and under 350B ask the bankruptcy court to reopen it to decide the same issue? Or would it be too late at that point? So that would go into the, it's a discretionary judgment, and that might go into. So they're saying it's possible that the bankruptcy court could still exercise 350B power to decide a question that the Article III court has already decided and reach a different decision? So, Your Honor, I guess what I'm saying is, candidly to bring it to this case, is when we had permission from Judge Arleo through her magistrate, I think it's clear Judge Arleo would not have decided what Judge Vetri decided. But the question is, was it an abusive discretion for Judge Kaplan before Judge Arleo had decided anything, having gone to the magistrate and said, please let us resolve this before Judge Kaplan, who by the way has already resolved and thought about these issues. And Judge Vetri said, yes, I am not letting Occidental file their summary judgment motion, because it's clear that what Judge Kaplan is going to say will have an impact on that. The question before this court is, is that an abusive discretion by Judge Kaplan? I think the answer to that is crystal clear. If the court has no further questions, we're going to ask to confirm the bankruptcy court and reverse the district court. Thank you, counsel. Thank you. We will take this case under advisement. Thank counsel for their excellent briefing and arguments.